Here ye, here ye, here ye. The United States Port of Appeal for the 11th Circuit is now open. According to law, God save the United States and his honorable court.  Good afternoon. We have one appeal to hear this morning. Counsel were familiar with your case. Authorities that you cited, we've looked at portions of the record at least. You do have more time than most oral advocates, but time is limited, so feel free to get straight to the heart of your argument. Be mindful of the clock. If the red light shines, it's time to stop. If you're answering a question from the court, of course, you can finish up your answer and you won't lose any rebuttal time if rebuttal time is something that you have. Okay, so it's Humphreys v. Warden. Ms. Benton. I'm here this afternoon with Lindsay Mann of Trautman Pepper on behalf of Mr. Humphreys. I plan to focus my argument this afternoon on our jury claims, but of course I'm glad to address any questions the court may have with regard to the penalty phase and effectiveness claim. Mr. Humphreys' sentencing jury unanimously agreed on certain aggravating circumstances, but were unable to agree on their view of the proper sentence over the course of three days. Under Georgia law, the consequence is a judge-imposed life sentence. We are here today only because at least one juror surrendered their conscientiously held view of the evidence in order to permit the jury to return a unanimous verdict. The only reasonable manner in which to understand the trial court's actions and instructions in response to the immovable deadlock is as profoundly coercive and unconstitutionally misleading. The Georgia Supreme Court's decision on direct appeal unreasonably applied the federal law, which entitles Mr. Humphreys to 12 uncoerced votes, and unreasonably found the factual question at the heart of the matter, the question of coercion. Can I ask you a question? You don't dispute, I guess, do you, that we have to review the charge in its entirety, right? Correct. And at least as I read it, three different times the judge said some version of, if possible. I mean, so I get it. There's this awkward phraseology in the middle that I think, you know, reasonable minds might disagree about. But given the totality, do we really think this is profoundly coercive? If possible is all the more confusing. The question that the jurors put to the court is, what do we do if we're not able to agree? That was the question on Saturday morning at 11 a.m. Here's the thing, though. You had said earlier that some juror, at least one juror, surrendered their conscientiously, their conscious objection to a guilty verdict, right? As I read this charge, it's not just that it says, if possible. It says a fair amount more than that. It says, the court deems it proper to advise you further in regard to the desirability of agreement. If possible, then it goes on to say, for a decision and verdict, if possible, it's the law. And the Georgia Supreme Court says this is a correct statement of Georgia law. It is the law that a unanimous verdict is required. But then it says, while this verdict must be the conclusion of each juror independently and not a mere acquiescence of the jurors in order to reach an agreement, it goes on to say your duty is to decide the issues that have been submitted to you if you can consciously do so. If you can consciously do so. And then it says, try to arrive at a verdict if you can conscientiously do so. I mean, wow. This isn't just vague, if possible. This is, you've got to independently arrive at this. You have, you know, the if possible is in relationship to your conscientious decision, right? Right. Which is why it's a context and circumstances test. It's not merely the words on the page. And the entire charge is just a page and a half. And it does say if possible, but the jury has now twice said it is not possible. And the court can see that it's not possible that, you know, on Saturday they are together. Can I just ask you, I don't mean to interrupt you, but so when you said the jury has now twice said it's not possible, what do you mean? They sent three notes, right? Well, three concerning what I guess. Yeah, I want to make sure, were there multiple notes that, I don't think any of them said we're deadlocked, we're at an impasse, right? There's the one that's debated about it said currently, and maybe that was inserted later. But is that the only one that gave reference to the fact that we are disagreeing or something? So, yeah, right. The second note that prompts the coercive, the coercive unanimity is required instruction, that comes in response to a note at 830 at night after the jurors have been together for 12 full hours screaming. They're coming out crying. And one juror says, I want to be, the foreman says, please remove me due to the hostile nature of one of the other jurors. And at that point, trial counsel renews their motion for a mistrial saying, among other things, you should declare a mistrial or you should pull these jurors to find out what's going on. Find out whether further deliberations are likely to lead to a verdict. Find out if they're too exhausted. That's specifically in the prayer for relief. Find out if these jurors are so exhausted that one of them is about to surrender their conscientiously held view of the evidence. And the trial court doesn't do that. The trial court instead says it is the law that a unanimous verdict is required. And it's plain that it's not possible. So the language that if possible, the jurors cannot square that. And that leads to an enormous misimpression in the jury room where they're trying to figure out what will occur if we're not unanimous. Because the one thing they do agree on is they do not want a parolable life sentence. Well, here's the thing, though. The first note does not suggest to me they're deadlocked. And I'll tell you why. We, the jury, have agreed on statutory aggravated circumstances on both counts but not on the penalty. Currently, we agreed life imprisonment with parole is not an acceptable option. We are currently unable to form a unanimous decision or life of imprisonment without parole. Currently is twice used, which does not suggest to me deadlocked. What do you say about that? Well, currently, obviously, it was added by a juror who had a specific reason for adding it. She wanted to disavow the idea that they were deadlocked. The other jurors have a very different purpose in sending the note. They want information about what do we do now that we can't agree. So the addition of the word currently matters not to them. I mean, the trial judge, wait a minute, wait a minute. The trial judge has a note that says where the word currently has been inserted. How is the trial judge to know that that is not an accurate reflection of the jury? Well, you know, on Saturday morning, probably sending them back at that point is fine. At 11 a.m., she just says. But there's nothing about the word currently being added by the foreperson that necessarily alerts the judge that there's something wrong with that. It's just, oh, you know, on reflection, to be more accurate, let's insert the word currently, right? It could just as easily be that. Okay. All right. But by the time the instruction is given, we're now 830, the second night of deliberations, when for the past 12 hours at that point, they can see that the jurors are incredibly upset. Mr. Berry describes them as in distress, and the trial court does not dispute that. She says, well, it's been a very emotional trial. They don't say they're deadlocked, though, right? They're visibly upset. One juror asked to be removed due to the hostile nature of another juror. When they come in the courtroom, I guess this is the second time they're in tears. Is that right? Mr. Berry says that it's each time they return. So when they return, asking to hear Mr. Humphrey's statement to the police again. Several jurors, he says, are obviously in distress. They're in distress again when they come back, saying due to the hostile nature of one of the jurors. Yes, they are. I mean, by Friday night, rather, the first time they abruptly say we want to leave, they've asked to work until 11 on that first night. Neither of these times, neither of these first two times, it seems to me, does the juror say, communicate to the judge that they are deadlocked. Nor does the judge inquire on Saturday night after observing all of this whether additional deliberations will assist, which is exactly what the defense is asking for and what cured the coerciveness in Loewenfeld v. Phelps. That if you go and say to the jurors, do you think that additional deliberations will be fruitful? They all would have said no. That is absolutely clear. The judge does not do that. But, I mean, so you use the case Brewster as kind of a comparator. I mean, isn't Brewster of a different order altogether, right? I mean, am I right that in Brewster the jury came back five different times and said we're deadlocked, we're deadlocked, we're deadlocked, we're deadlocked, right? That's just like not remotely this case. Whatever happened, it's not that. But the coercion is from the perspective of what reasonable jurors would have understood. And reasonable jurors have been told you must agree. They don't know what will happen if they don't agree. There's a profoundly misleading impression left on them about what the consequences will be if they don't agree. And that is what's driving the coercive nature of what's happening inside the jury room. The judge could have put all of this to rest by saying on that first evening, tell me are further deliberations going to be useful. Susan Barber's testimony is that the explicit reason that she sent the note saying I want to be dismissed is because she believed that she would get a private audience with the trial judge. And she had good reason to think that because at the beginning of the trial, another juror had made some sort of thumbs up hand gesture to a bailiff who was transporting Mr. Humphreys. And when that happened, the trial judge called all the jurors in to privately voir dire them in chambers about what they had seen and what its impact was on them. So she thinks communicating that something hostile is happening inside the jury room will result in an inquiry into what's happening in the jury room. The affidavits are inadmissible under Georgia law, right? Well, it's our position that on the juror coercion claim that the Georgia Supreme Court's decision is unreasonable without respect to the evidence that's barred by the no impeachment rule. But it is also our position that all of the affidavit testimony must be admitted under the federal constitution. That has been the federal law for at least 170 years. Since Reed, it is made very clear in Pena-Rodriguez. And the Georgia law explicitly incorporates that exception as well. It says that there is an exception for when the misconduct was so prejudicial that can be said that the verdict is lacking in due process. That is explicit in the Georgia law. It was required. And if Motion for a New Trial Council had put forward the full panoply of evidence of prejudicial misconduct here, it's clear that it falls into that carve out. So can I ask you a question? So ordinarily, I guess I tend to think about juror affidavits coming in, if at all, to bear on external influences on the jury. And it's what you're saying here that there's this kind of residual sui generis thing for when things have gone so sideways. What's the kind of like the limiting principle of that? I mean, like it kind of seems hard to get your hands around. So in Georgia, it says if the misconduct is so prejudicial that the verdict lacks due process. That's the Georgia standard. What is that? I guess I'm saying what does that mean? Pena-Rodriguez instructs it here because it points to two specific things that mean that the no impeachment rule must yield. And it says two things. First, that the need to eliminate racial bias from the jury system has such a paramount importance that we're going to give it this privileged place. And the second thing it says is that, well, there's no other way. The Tanner factors really don't work well. Usually the only way you're going to get at this evidence of racial bias being a part of the verdict is from the jurors themselves. And so I think that's very instructive here because the other thing that enjoys that uniquely privileged place in our jury system is the need for reliable determination that death is the proper punishment. That we don't allow people to be executed on the basis of information they have had no ability to explain or deny. I guess the thing I worry about is that are you just creating – you're just creating an exception to the external influence sort of benchmark for capital cases. I mean like I take Peña-Rodriguez to be like race is just different. It's just special. I'm not sure how substantively this is unique except that it's a death penalty case. So is what you're saying like any time something goes sideways in a death penalty case, you can crack the jury? No, I do think the law is clear that death is different, but I think the opinion here could be incredibly narrow. You have a juror who lies to the court about her prior experience, conceals her predisposition to a death sentence, then injects a misleading interpretation into the other juror's discussion of sentence, and that is compounded by the actions and instructions of the trial court. That's an incredibly narrow place where the verdict is plainly based on something other than the juror's view of the evidence. Brewster says coercion is relinquishing your conscientiously held view of the proper sentence, and that's – Susan Barber is clear here. I voted purely for the sake of agreement. We had spent a 14-hour day in trial. These jurors had been sequestered for two and a half weeks, and the only time they could communicate with their loved ones or their colleagues at work was with a bailiff listening on the line. They have been sequestered all that time. For six hours on Friday night until 1030, they put in a 14-hour day, even though only six of those are deliberations. The rest of the day was incredibly emotional testimony in mitigation and in victim impact. They have an emotional night. It's clear. Mr. Berry observes them coming out. So problematic, they ask to leave earlier than they intended and say, as soon as possible, get us out of here. Then they spent a 14-hour day together, 14 hours with someone screaming and cursing at you, trying to work together and being told at the conclusion of that it is the law, that a unanimous verdict is required, and then being told to come back on Sunday with the hours left to see your family waning before Monday morning. A judge who has been under incredible pressure to get this case to trial and to a verdict, there is a lot of public criticism of Judge Robinson's handling of the case. Mr. Humphreys offered to plead guilty to a life without parole sentence and plead to every count in the indictment to avoid death right away, four years earlier. In his statement to Lieutenant Herman, he says, I'll plead guilty now. So if this case does not result in a verdict, the last four years and a month-long trial in a county 300 miles from home have all been for naught. Can I ask you just a quick question? So I should know this, but I just either don't know it or can't remember it. Was Pena-Rodriguez itself a capital case? It was not. I believe it was a sexual abuse case or a sexual misconduct case. So I guess the thing that I worry about a little bit is that so if the usual rule, let's say, is you can sort of use juror affidavits only to expose extraneous influence on the jury, that's the usual rule. Pena-Rodriguez then comes along in a non-capital case and says, and we are now saying to get at racial sort of, you know, vectors in the jury room. And then you say, likewise, in a case like, in a capital case like this, you say, I think the opinion can be narrow. And then you just proceed to describe the fact of this case that say, like, this can be kind of a good-for-this-ride-only kind of opinion. But, I mean, that just doesn't seem very principled. It, like, seems like a result, but I'm not sure how principled it is. I mean, it seems like any, like, in the next case, someone might come in and say, well, my verdict, likewise, was lacking in due process because, and then just recite the facts of that case. That's what I worry about is that it just, I can't tell that there's a legal principle underlying what you're asking us to do. The legal principle is that the misconduct is this prejudicial and, and this is what makes it even more rare, that all of the things that are meant to identify that misconduct in the moment have failed. Right. All of those things that the trial court could have done. And it's an unreasonable application of clearly established federal law by the Supreme Court for the Georgia Supreme Court not to have done that? Can I ask which claim we're talking about now? It won't, I mean, insofar as you're saying Supreme Court case law makes that evidence admissible and the Georgia courts did not consider it admissible, wouldn't you have to establish that the Georgia courts admissibility determination? Insofar as it is a federal law determination, which I understand your argument a moment ago to have been, wouldn't that have to be an unreasonable application of clearly established federal law? No. Why? Because the jury misconduct claim and the broader jury coercion claim that were raised during the state post-conviction process were found defaulted by the state habeas court and defaulted by the Georgia Supreme Court on the application for certificate of probable cause. So the ruling all along has been a default ruling. No Georgia court addressed the substance of those. Now they addressed appellate counsel's ineffectiveness in failing to put that evidence forward at the motion for new trial. And appellate counsel's ineffectiveness gets claim 54D deference. The default ruling does not. Well, I thought though that there was a motion for new trial, right, that argued that this was coercive. And the argument, the procedural bar that was applied in habeas was this was already decided in the direct proceedings. Is that not right? That is correct. As to the court coercion claim that the court's instructions were unduly coercive and that the court's actions were misleading and coercive. So the bar claim won for just the Allen charge claim. Got it. OK. The second claim that there was prejudicial jury misconduct. That claim was put forward for the first time in state post-conviction because I thought that was also in the motion for new trial. I thought it was in. No. I thought there was an argument that there was juror bias and misconduct that was raised in the motion for new trial. No. No, that claim that goes up on direct appeal is that the jury verdict was coerced because the jury believed that they had to reach a unanimous decision. Otherwise, he would be set free or be sent to a parole. The claim that is subject to the cause and prejudice inquiry is the juror misconduct. Isn't that the ineffective assistance of trial counsel for failing to raise the juror misconduct? Right. Technically, motion for new trial on appellate counsel, but yes. So it's a failure to raise it in a motion for new trial. Correct. That motion for new trial on appellate ineffectiveness claim gets 2254D deference. The underlying claim that was defaulted does not, and the cause and prejudice determination does not. Can I ask you a question? How does the admissibility issue that the chief was asking you about intersect with your ineffective assistance as cause argument? I mean, can we say that no reasonably competent lawyer would have done this knowing the admissibility problems? At least challenges, right? I mean, like whether or not you think the chief is right about the admissibility determination in the end, can we say that no reasonably competent counsel might have stood down recognizing these challenges? Not on this record. Motion for new trial counsel didn't stand down. They were affirmatively trying to prove what happened in the jury room. They put up an affidavit from juror Daryl Parker to show the coercive impact of the trial court's charge. They're not standing down because they believe this is inadmissible. They just haven't done their homework and got the full panoply of evidence. Yeah, but probably because they think that getting affidavits from jurors will be fruitless and futile because it will be inadmissible. They got two affidavits from jurors and put one of them into the record and then had investigators testify about their conversation in the vacancy. They didn't believe that. They were arguing exactly the opposite at the motion for new trial proceeding. There was no reason, no strategic reason not to put this evidence up. Can I ask you about just two specific cases and you can tell me if I've got these wrong? And I don't mean for this to be quiz show. So if for some reason you're not familiar with them, we can talk about them on your rebuttal. But there's this case of ours, United States v. Foster. Do you know that one? I do know that one. Okay, so I'll just give it to you so you can take a look. Maybe it's 878 F3rd. My citation is at 1310. And it looks like there we excluded juror testimony about bullying that she claimed to have experienced during deliberations. And then there's a U.S. Supreme Court case called Warger v. Schauer. Do you know that one? I do. 574 U.S. at 51. And there it says some version of even if jurors lie in voir dire in a way that conceals bias, they excluded the affidavits. So that seems pretty close to a few things we've got going on here, right? So Warger is a civil case, and Warger explicitly decided on the grounds that there are other ways that you could prove this kind of bias and misconduct, that you could prove the jurors lie. Here there is other evidence that proves that Ms. Chancey was lying about her misconduct, and that is she describes accurately the circumstances of her prior assault to the investigators post-trial. We don't need to invade the province of the jury room. She describes her experience and proves the lie to trial counsel's investigators. And in Schauer's, Warger or Schauer's, I can't remember who the, but what the juror did was leave a misimpression. She omitted information. Here what Ms. Chancey did was affirmatively misrepresent what happened and made it a less harrowing, less aggravated experience. Gotcha. Thank you. Mr. Malcolm. Thank you, Your Honor. Please support. I'll try to just work from where we're currently at with the juror misconduct claims. Our contention is the juror affidavits were wholly inadmissible, as correctly determined by the state habeas court. And the idea that there's this sort of third catch-all exception in state law that is sort of outside external or extrajudicial, you know, information about the case brought into the jury room, it doesn't exist in my opinion. So I think, and I'm sure she'll correct me if I've misunderstood, but I think what your friend on the other side of the aisle is saying is that there's, under Supreme Court case law, under Supreme Court precedent, that there is an exception when things break down so much in the jury room that it actually becomes a due process violation. And, you know, I've heard today that, you know, maybe there's a question about what is the limiting principle, is this just made up, blah, blah, blah. Of course, we know the Supreme Court has applied this in Pena-Rodriguez. And I guess I just wonder, let's say that the jury went back and the foreperson said, you know what, this is a lot of work, you know, let's just flip a coin and see, you know, heads, he's guilty, tails, he's not. And everybody else agreed to do that, and that's how they came back. I know that's kind of a very out there hypothetical, but let's just say that happened. I mean, it seems like that would be a denial of due process, and that might be something that you could crack the jury on. Would you agree with that? Potentially, Your Honor. Okay. So we know that there is another situation in which there's just a problem, there's such a problem that it's clear that due process hasn't been provided. And so then the question becomes one of degree and where we draw that line, right? Sure. Okay. So in this situation, I guess the question is, let's assume that all of the evidence came in. If all of the evidence came in, just for purposes of this discussion, then would we think that there was a reasonable probability that the jury would have come back differently? And if the answer to that is yes, are we at a point where there's a due process problem? Well, I think I would, assuming that we're saying all that juror post-trial testimony to come in, which we contend it should not, but assuming for the sake of your hypothetical it did, I would still answer in the negative. No, this is not a case that rises to that level, right? I think what that language is coming from is it might be dicta, it might not be from the Warder case that then sort of is used in Pena about the racial animus and bias, but there's no allegations or suggestions of anything along those lines in Humphrey's case. So I don't see any sort of… Although there is, right, you're right. Racial bias is something completely different from death penalty, pro-death penalty bias. But it's still a bias, right? And if you knew, if you could show beforehand that someone would never impose the death penalty, you could get them disqualified for cause, right? Sure. Okay. And so if you could show that somebody would always impose the death penalty, you could get them disqualified for cause, where you might not want to, but the other side could, right? Understood. Okay. And so it obviously is not, and I don't mean to make the equivalent here, but still we're talking about two kinds of bias that would, without a doubt, get you kicked off the jury if you knew ahead of time, right?  If that was disclosed in Wadier, it could be a basis for a challenge for cause, depending on what your opinion was. And the reason is because it's a due process problem, because we know that the case isn't then being decided on the basis of the evidence. It's being decided on something that comes from outside of the record, something that is not able to be addressed at all. At least one of the parties will have no chance, right? Here's where I think this case is different, if I could just push back on that hypothetical a little bit, Your Honor. The jury in question who was allegedly causing the commotion in the jury room and being difficult was Juror Chancey. She was questioned under oath during Wadier extensively about all these subjects that came up in these post-trial affidavits. So you have her under oath being questioned about her potential bias about, you know, what sentencing options she would consider. She said she would consider all of them. She disclosed this prior, you know, act of break-in. They all knew about that. Mr. Humphrey's trial attorney has asked her about that. So that was disclosed. Right. And I get your point. And I don't really want to ask about the specific how we would decide, you know, whether or not it was in this case. But I'm trying to identify a rule here. And so I'm trying to figure out what the rule is when you fall into that third bucket, right? When do you fall into the bucket of everything went so wrong that there isn't due process? Because we've agreed now that, like, if they went in and just flipped a coin, we would fall into that bucket. So I'm wondering, you know, what else falls into that bucket. And then we can discuss whether the facts of this case do or not. It may well be the case that they don't. But I think the first project is figuring out legally where that line is. That's just what I'm trying to get from you. I would say we'd have to look at the clearly established federal law from the Supreme Court, which has given us the cases we cited. Right. In regards to an example of where that would come into play. And that's what we have. Right. And I agree with you with respect to the deference issue. But on the part that was procedurally defaulted and we're doing the cause and prejudice inquiry, I don't think we have that same deference issue. And so if we have to decide ourselves, based on what the law is, where that line is, that's what I'm trying to get help from you on. Where do you think that line is? And how do we define where that line is? Well, if we're talking about misconduct claims in the context of cause and prejudice, we're obviously talking about, you know, strickling performance and prejudice and that type of analysis, which the Georgia Supreme Court, you know, dealt with in its order denying CPC. So there is a level of deference to those decisions as well as the state habeas court's final word. Can I ask you just a quick question on that? Because I think I took your adversary to acknowledge this. But we do give deference to the ineffective assistance of counsel determination, even when it's made for purposes of cause and prejudice. Absolutely. And you have that. So the misconduct claims, because they're defaulted, there shouldn't be some windfall that this court gets, you know, a de novo review of sort of the substance of what we're talking about. And counsel in that, let me make sure I understand this. In habeas, when the ineffective assistance claim was rejected for cause and prejudice purposes, the court also held important at least that the juror affidavits were inadmissible and could not be considered for that, right? I think both levels of state court, the state habeas court and then the Georgia Supreme Court, in denying the appeal from state habeas, they both said that. Yeah. Okay. And so to the extent that there's something wrong with, if that's purely a matter of Georgia law, the inadmissibility question, then we have to, we can't second guess that. And if there's some kind of federal standard that somehow is an overlay for that, that too it would seem to me would be something to which we would owe deference because inadmissibility would have to have been an unreasonable application of clearly established federal law, if there's a federal argument to that. I would agree with that. So, but did the, so here's where the problem comes in, right? This is, this case is a real puzzle, right? Because at one point we are considering it, no doubt, under EDPA deference. The Allen charge claim is being considered under EDPA deference. There's no question about that. And, of course, we're talking about whether or not the affidavits come in. But when we're talking about the defaulted claim and we're talking about cause and prejudice, any factual findings that the state court made we absolutely give deference to. But when we're talking about whether there was, whether there is a violation of the federal constitution that the state court did not consider, there's nothing we can defer to there because it was procedurally defaulted. And so we have to decide for ourselves whether there is a violation of federal law. Now, you know, there are so many different levels to this and so many different steps, it doesn't necessarily mean even if we decided that there could be a violation of federal law that we get to the next part, which is, you know, does, do the facts here meet that task? So I'm just trying to isolate that one task, that legal question, that federal legal question to find out what is the task about when things have gone so wrong that in the jury room that there is a violation of due process and we can crack the jury. That's what I'm trying to, that's really all I want to do. And I don't know whether it makes a difference here or not, but it seems like a preliminary question to me that we first decide what the right standard is before we figure out whether or not it was met here. If I understand your line of questioning, Judge Rosenbaum, I don't think you have to answer that question here because the state courts dealt with that procedurally defaulted claim. They found it to be procedurally defaulted. They made the state law determination that all this post-trial jury testimony was inadmissible. And then they went on and talked about cause and prejudice and said there's no cause and prejudice here, applied the Strickland test, and said this is why they can't overcome this procedural bar. And there is deference that has to be given to those determinations because they were reasonable. And so I think the fact that, I don't know. But the problem is on the prejudice determination, right? They said there can't be prejudice here because the juror affidavits were not admissible under Georgia law. That's part of their answer. Okay. But that's basically it. I mean, basically, it's not admissible. Well, they didn't say, let's say they were admissible and they're still not. The Georgia Supreme Court did say they were inadmissible. The state habeas court got that right. But then it also said there was no reasonable probability of a different outcome applying the Strickland prejudice test. Therefore, they upheld this. As part of cause and prejudice? As part of cause and prejudice, which, of course, there's a deference owed to that decision because it was a reasonable application of Strickland prejudice. So I think that's my pushback to your line of questioning on that issue. I don't think that has to be answered in this case. Yeah. Maybe you're right. I don't think you are right, but you might be right. Maybe I just need to go back and think about it a little bit more. You don't have to answer the question if you don't want to, but I'm telling you it would be helpful to me to have an answer to the question because let's say I go back and reconsider and I still think that I disagree with you about the prejudice part of this. Let's say that I come to that conclusion. Then I am going to have to decide what is the federal standard here? What is the rule that we take from the Pena-Rodriguez case and the other couple of cases that have considered this where it's come out the other way? What is the rule that we take from these things if we're applying federal law in the first instance? If you don't want to answer it, you don't have to, but I'm asking for your assistance. I'm not trying to be. It's okay. It's your argument. I can answer it directly with preserving my arguments, which that's sort of what I stand on. But Pena-Rodriguez, as I said before, is nothing like this case. Warder is like this case when it's about the alleged failure to disclose something during jury selection or voir dire. It's directly on point. In that case, the juror didn't disclose anything about a prior interaction, and the Supreme Court still said it doesn't matter. That's not enough to break the jury room and to get that evidence in. So that's directly on point. That's clearly established federal law. Obviously, that's a tough question, and this case comes nowhere close, in my opinion, to anything beyond normal capital, vigorous deliberations. And that's accepting everything that was put forth in these juror affidavits as admissible, but it's not. I mean, I will say we see a lot of these. I know you do, too, obviously, but we see a lot of these. I have another one tomorrow. I just had one a couple weeks ago. We do these all the time. This is not like any juror deliberations I've ever seen. It doesn't mean that it's not normal, but it's not normal for the things I've seen. I've never seen a case where it's 11 to 1 against the death penalty, and you have somebody come in and say, look, you know, this happened to me, and if you don't vote for the death penalty, then he's going to go free, and he's going to do it to someone else, and that's going to be on your heads. I've just not seen that before. Can I just say that the 11 to 1 voting, that's not in the admissible state court record. I agree. I agree. That's why I'm asking you the question that I'm asking. Right. Obviously, I think we disagree on the factual sort of analysis of that, but I come to you from the position we're in after, you know, federal habeas and reliefs have been denied and these affidavits have been put forth at every level in some form or fashion, and they just don't meet any sort of criteria under state law, under federal law for admissibility, and even if they did, which is the only way we get into any sort of analysis as to what was the breakdown in the jury room as far as death penalty versus something else versus anything about, you know, the currently language being added to the juror note. Anything about those types of things that we'd have to sort of analyze to answer your question directly is not admissible evidence, and I just can't put that aside based on how clear to me the law is on that subject, Your Honor. It's not entirely clear to me that a juror who has disclosed during selection a previous victim of crime experience and talks about that in deliberations is guilty of misconduct. It doesn't strike me as an extraneous influence. No. That's not like I went and watched the news last night about this trial and here's what they're saying. Here's the evidence that the trial judge has excluded that y'all don't know about, right? Everything to bust through that jury wall and get that type of evidence in, it's got to be external. Yeah, I don't think anybody's arguing that it's extraneous. That's not what I've understood the argument to be. Maybe I've misunderstood it. I thought the argument was, look, there are some things where, you know, things just go so crazy in the jury room that you can't really say reasonably that there's been due process delivered, and this was one of those situations. That's what the argument is, and you shouldn't take anything by my questions that I'm endorsing one side or the other. I'm really just trying to figure out what the correct legal test is here because, you know. Well, I think first you have to look at what's admissible evidence, right? So if we're going to talk about how to analyze that. Right, but that's. . . I'm going to answer your question without answering that one first. Because the first question is whether there is. . . Well, we know there's this exception for due process. If something goes so crazy, it violates due process. And if the answer to that question is that this situation falls into that category, then the affidavits are admissible. If the answer is this situation does not fall into that category, then the affidavits are not admissible. And so that's why the first question can't be whether the affidavits are admissible because the answer to the question we're trying to find dictates whether the affidavits are admissible. I don't want to keep taking up your time. I just want to. . . I want to answer your question. I legitimately do. I think you have to look. . . I mean, what's the clearly established federal law on this subject? Right, so my friend on the other side. . . But that's. . . But that's only if we get to. . . That's only if we get to ed pediferance. If we don't get to ed pediferance, then it's not about what's the clearly established federal law. It's about what is the correct answer under federal law as it currently exists. To get to that, don't. . . Wouldn't this court have to say that the Georgia Supreme Court's Strickland prejudice analysis was unreasonable? So. . . Because that's the cause of prejudice that the court. . . And the unreasonability of it would be tied up in the admissibility determination insofar as due process requires it to be admissible, right? I mean, if the admissibility question is purely an issue of state law, we're bound by what the Georgia Supreme Court says. It's not even a matter of deference. Their decision is just controlling, period. And if their decision about cause and prejudice, which is an ineffective assistance inquiry, a Strickland inquiry, if that decision on federal law, including what's admissible or not under the due process clause, is a federal law determination, we have to defer to it if it's not an unreasonable application of clearly established federal law. I agree with that. But there would have to be a determination under federal law, and that's the problem. Can you point to us in the Georgia state court decisions where they make the determination under federal law that this doesn't fall into the category of things went so wrong in the jury room that it violates due process? I'm just not sure that there's this well-established exception that you're talking about. I understand what the Supreme Court said in Pena. Well, wait. Let's answer her question first, okay? Does the Georgia Supreme Court have to specifically address that for there to be a deference requirement? Of course not. No, they do not. Is there any indication at all? This is what I'm trying to find out, though, because is there any indication at all in the Georgia state decisions that they considered the federal question, that is, if it violates the federal constitution? Because if there is, then that would be helpful to me to know. But if there isn't, then why don't we have to consider that question? Because of what I previously said. I'm not sure as I'm trying to think back on the final order in the Georgia Supreme Court's case. I mean, other than citing Strickland and using that analysis to say there's no question. The only way this question comes in at all, as I understand it, is because of cause and prejudice. That cause and prejudice was argued in state habeas, right? Yes. And it was decided in state habeas against the petitioner, right? And the court decided that the evidence was inadmissible and there wasn't cause and prejudice because there wasn't ineffective assistance. That's a decision on federal law. And whether they explain every jot and tittle of it doesn't matter for our determination, does it? No, Your Honor. And that's essentially what I'm trying to argue to you, Judge Rosenbaum. Did the court decide that there wasn't a due process violation? Which court? The Georgia State Court on the procedurally defaulted juror misconduct, ineffective assistance. Like we talked about with the admissibility of the post-trial testimony and then the Strickland cause and prejudice analysis. Right. No federal due process analysis on the admissibility of the affidavits, though, right? It's a defaulted claim that they argued there was not defaulted because counsel didn't present it properly. Okay. I'm not going to argue any further with you. I don't mean to be arguing. I just want to give you a chance to answer those questions. But I think I understand your point. So can I ask just a question just to kind of tie this up, maybe? So when the Georgia, either the State Habeas Court or the Georgia Supreme Court addressed prejudice, because that's where I think that the sort of the merits of the juror misconduct issue that Judge Rosenbaum is getting at, this due process thing, that's where it seems to me that it would come in. When you get to finally, when you get to the we're piercing through cause and now we've gotten to prejudice, does this claim have any legs at all? That seemingly is where the merits would be addressed. What did either of the Georgia courts say about prejudice? I just don't remember as well enough. The Georgia Supreme Court said that, you know, there was no reasonable probability of a different outcome, and it basically upheld the State Habeas Court's decision that the affidavits, the contents of them were inadmissible under the Georgia no impeachment statute at that time. Okay. So that's what was said. So this whole issue didn't, to my recollection, come up explicitly in the State Court's calculus in, you know, in their opinions. But as Chief Justice Pryor has alluded to, that's not required. It certainly doesn't get them around their procedural default and the deference that has to be afforded to the procedure. Tell me this, did he make an argument about due process requiring the admission of this evidence? The juror misconduct? Yes. Not that I recall. I'd have to go back and, you know, the record in these capital cases are— So insofar as it's somehow separate, it might be unexhausted. But I'm not—I don't see how it can be separate. I mean, it seems to be that it's all bound up in ineffective assistance because the determination of the Georgia courts on this was procedural default and no cause and prejudice because no ineffective assistance. That's correct. That's correct. And as far as the outcharge, I don't think there's any. To me, the Georgia Supreme Court certainly applied the clearly established federal law on that issue, looked at the totality of the circumstances. So we'd ask this court to affirm on that claim as well. If there are no further questions on those claims or the ineffectiveness claims, we'd ask for you to affirm. Thank you. Thank you, Mr. Malcolm. Ms. Benton, you've saved seven minutes. Thank you. I want to attempt to bring some clarity to three things here. Okay. One is what does and does not get deference. The second, I want to point out that there is evidence that indisputably falls outside the no impeachment rule that the court considers. We've been talking about it as though there's an all or nothing proposition, that all of this evidence of misconduct is covered by the no impeachment rule, and our briefs make clear that's not the case. And then we can, if there's time, circle back to when the rule was. Georgia courts decided that it always ended miscible, right? Yes. All right. So why is it? And they did so in state habeas in rejecting the ineffective assistance as cause and prejudice, right? Correct. We do owe deference to their ineffective assistance as not being cause and prejudice, do we not? Well, those are separate things. You owe deference to the appellate ineffectiveness claim. Cause and prejudice is a de novo question for a federal court that does not get deference. Even if it's been decided by one state habeas? And even if the ground. The question hasn't previously been left open by this court. But so even if the ground of the cause and prejudice is ineffective assistance? I don't understand that at all. Why would that be the law? You're saying it's left open by our precedents? You're saying that we haven't actually decided that? I would direct the court to footnote 16 in the CLEV warden decision. So explain it. Okay, but that's half an answer. Let me make sure I get the rest of it. Are you telling me if I go to the footnote in CLEV, it will tell me that we haven't decided it? Or are you telling me that it will say we decided it in one way in the circuit split? It says that you don't need to decide it in CLEV and that there is a circuit split. And to my knowledge, this court has not decided it. Okay. Can you tell me? Yes. Deference. But when you have a claim that is indisputably ruled defaulted, there's no alternative merits analysis in the state court decisions. It's a question of whether there's cause and prejudice to overcome the default. That is a federal question reviewed de novo by this court. Can you explain to me why it would be de novo review? If the state court said, okay, this is defaulted. We've got a cause and prejudice analysis. The grounds for cause being alleged is ineffective assistance. We do a Strickland analysis. There's no ineffective assistance. Why wouldn't we defer to that? I don't think I understand. I get it that Seeley might have preserved it, but I don't think I understand as a first principles matter why we would not defer. Because the plain language is 2254 says for any claim that was adjudicated on the merits in state court. And then it goes into D1 and D2. The claim was not adjudicated on the merits in state court. Now we can talk about whether that should be the rule, but that is the rule and that is what the statute says. So is the underlying premise of that, because this is not a claim, it's not an ineffective assistance claim. So you're telling me there are decisions going both ways in the circuits. Do you know what the circuit split is? How many are on each side of the circuit split? I do not. That footnote does cite at least one decision, I believe, from the First Circuit and the – I don't know if you can answer the question, Judge Pryor. I know that there is at least one court who has resolved the question on either side. Can I ask you a related question? This is something that I've just never quite understood. If ineffective assistance is, can be, a freestanding claim for relief, right, when it is folded in to a cause and prejudice analysis, I don't really think I understand, like, what independent bite it has. Like if you have proven ineffective assistance of appellate counsel, wouldn't you just argue that the result is petition granted? We have argued that. We've argued that appellate counsel was ineffective  So we win that way, but we also win on de novo review of the jury misconduct and coercion claim. That is the one presented during state post-conviction. I want to be cognizant of whether there's another question coming on that. I don't want to – No, no, no, sorry. I'm just kind of thinking about it. Sorry. Go ahead. I also wanted to just very briefly point out, because I didn't quite get there during my initial argument, that there is a fair amount of this evidence that isn't covered by the no impeachment rule indisputably. That is Ms. Chancey's expression to the other jurors before the end of the guilt phase that he's guilty and he deserves to die. It's outside the jury room. The evidence hasn't even closed. She shouldn't be talking about the case at all. There are her statements to investigators that don't necessarily have anything to do with the deliberations themselves. She talks about a great number of things, including her prior experience of being assaulted in her bed by an escaped murderer. This is a case where the question was whether Mr. Humphreys could be safely confined. That was a major question for the jury in the penalty phase. There are the statements from the jury room. There is the jurors coming out in obvious distress. There's a significant amount of evidence that is coming from the jurors but is not covered by the no impeachment rule. I just want to be plain that we are preserving that argument. I also want to return to the notion of what are the narrow circumstances where the rule must yield in a capital case. Here we have a juror who is explicitly concealing the fact that she is not qualified to be on a death penalty case because she cannot consider a sentencing option other than death. And it is indisputable that her presence on this jury was the outcome determinative factor in making other jurors surrender their consciously held beliefs. But for her presence on that jury, it would have been a life or death sentence pronounced by the other jurors. That is clear from the record. That's an incredibly narrow exception. Even under Georgia law, she is injecting information into the jury room that Mr. Humphreys has no ability to confront or deny. And that is the notion that he will be either set free or be sentenced to a parolable life sentence if they can't agree. She is leveraging the trial court's coercive instruction to advantage that. And I see I'm almost out of time. I was going to offer a final thought about why appellate courts don't typically see this. And that is because typically trial courts intervene when this is happening to set things straight. As Mr. Berry testified at the state habeas hearing, he had another case just like that where the judge imposed a life without parole sentence. And that was the end of it. So I would ask on behalf of counsel that this court reverse the decision of the district court and grant Mr. Humphreys habeas relief to which he is entitled. Thank you, Ms. Bennett. We are adjourned.